## CITIZENS' TRUST CO. OF BUFFALO, N. Y., et al. v. EAVES et al.

(Circuit Court of Appeals, Eighth Circuit. April 13, 1925.)

No. 6689.

**1. Fraudulent conveyances ⟨⟩95(2)—Deeds of land, in consideration of money and past services rendered by grantor's wife and daughter, held supported by sufficient consideration.**

Where wife and daughter gave inheritance and money earned in aid of farming enterprise, and themselves worked in aid of it, *held*, conveyance of portion of land accumulated to them, prior to investments by husband of which they did not approve, were supported by sufficient consideration, regardless of husband's right to convey in consideration of love and affection.

**2. Fraudulent conveyances ⟨⟩154(1)—Deeds held not rendered fraudulent as to creditors through failure to record.**

Failure for two years to record deeds to grantor's wife and daughter *held* not to render them fraudulent as to creditors of grantor, where such creditors had not relied on lands conveyed in extending credit, and failure to record was unintentional, and merely overlooked by one instructed to do it.

**3. Fraudulent conveyances ⟨key⟩70—Conveyances to grantor's wife and daughter held not invalid, as made with view to fact that grantor might or would become indebted.**

Deeds to grantor's wife and daughter, constituting a division of property jointly accumulated prior to grantor's entry on enterprise of which wife did not approve, *held*, not invalid on theory that they were executed with a view to fact that grantor might or would become indebted.

Appeal from the District Court of the United States for the Eastern District of Oklahoma; Orie L. Phillips, Judge.

Action by the Citizens' Trust Company of Buffalo, N. Y., and the City National Bank of Galveston, Tex., against J. J. Eaves and others. Judgment for defendants, and plaintiffs appeal. Affirmed.

Earl Q. Gray, of Ardmore, Okl. (H. C. Potterf, H. H. Brown, R. B. Brown, and J. E. Williams, all of Ardmore, Okl., on the brief), for appellants.

Stephen A. George, of Ardmore, Okl. (J. B. Champion, Thomas W. Champion, and Lois A. Van Reed, all of Ardmore, Okl., on the brief), for appellees.

Before STONE and LEWIS, Circuit Judges, and SCOTT, District Judge.

STONE, Circuit Judge. This is a bill by the Citizens' Trust Company, a judgment creditor, against James J. Eaves, Edna E. Eaves, his wife, and Mamie A. Brady, their daughter, to set aside two deeds, one by Eaves to his wife conveying 485 acres of land and one by Eaves and his wife to Mrs. Brady conveying 965 acres of land, all located in Oklahoma. Other creditors intervened as holders of similar judgments. The deeds in question are dated February 1, 1920, and acknowledged the following day. They were not recorded until February 20, 1922. On July 10, 1920, a note which was the basis of the Citizens' Trust Company judgment was executed by Eaves. The trial court sustained the conveyances as not being fraudulent and dismissed the bill on the merits. From that decree, this appeal is brought.

In support of their position here, appellants present several contentions.

It is suggested, in limine, that because of the relationship of the parties to these deeds the burden of proof is upon appellees to disprove the fraud. Be this as it may, in our opinion, they have abundantly sustained that burden.

[1] The first contention concerning these deeds is that they were not drawn or execut-ed upon their purported date, but were actually executed shortly before recordation on February 20, 1922. Another contention is that the deeds were without fair or adequate consideration. These two contentions may be treated together in considering the applicable facts which are as follows:

Eaves and his wife came from Texas to Oklahoma more than 30 years before the date of these deeds. They possessed at that time only two teams with wagons and $300 in money. All of this property, under the laws of Texas, was community property. They located in the neighborhood of the land here involved and engaged in farming and stock raising. Not long after coming to Oklahoma, Mrs. Eaves received a small inheritance from her father. This was invested in cattle. During the next 30 years, Mrs. Eaves, besides attending to her household duties, worked as a hand in the fields. When Mrs. Brady, their only child, became large enough to help, she did the same. Mrs. Brady also accumulated small sums of money from time to time from stock given to her by her father. Later, she taught school for several years, turning over her salary to her father for investment in cattle and land. The money thus made by the three people was invested from time to time in land and cattle. By 1919, they owned over 4,000 acres of land, 500 or 600 head of cattle, a few horses and mules and had about $11,000 on deposit. All of this property stood in the name of the father except 1,280 acres, which had been bought in equal parts in the name of the mother and daughter respectively from unallotted Indian land sold by the government. They had no indebtedness except that the father, with other parties, had signed notes to a rather large amount with and for one J. S. Mullen, who was a promoter and oil speculator on a large scale and generally thought to be at that time a very wealthy man. About that time the father determined to buy land in the Rio Grande Valley. The mother was bitterly opposed to this investment and to his selling or incumbering the Oklahoma land for that purpose and insisted on having some division which would protect her and her daughter from any such situation. It was to meet these views and to divide the property that these deeds were executed. This is the positive evidence of all parties who were familiar with the transaction, it accords with events and with the financial situation of the parties as it apparently seemed to them at that time and we think is the truth. The evidence that the date in the deeds

is accurate is the same by all of the parties and by the notary who made them and there is really no substantial evidence to the contrary. The deeds state that they are in consideration of $1 and love and affection. The notary and abstractor (Westerheide) swears positively that this form of expression of the consideration was suggested by him but there is no serious question in our mind that the real consideration was the mutual division of this property, to the accumulation of which, all three had contributed their efforts and means. Such a transaction affords valuable and sufficient consideration to support these deeds aside from any question of the right of a husband or parent to make a bona fide conveyance in consideration of love and affection. We think the deeds must be held good against the objections of predating and lack of consideration.

[2] Appellants contend, also, that, even though the deeds had been valid in the beginning, they became fraudulent by being concealed and withheld from the record. It is a general doctrine that a deed, to be fraudulent as to creditors, must be such either by intent or in its effect. Because the effect of concealment of a valid deed might enable the grantor to establish a fictitious credit based upon the apparent ownership of the deeded property, such concealment may operate as a fraud upon creditors. Obviously, however, this effect cannot be present where the creditors have no knowledge of or do not rely upon such property. All of the notes upon which the judgments of appellants rest were notes made by J. S. Mullen who was regarded, at the time they were executed, as a very wealthy man. Eaves and others executed these notes with and for the benefit of Mullen. There is no evidence as to any investigation of Eaves' financial standing except by the Citizens' Trust Company. That investigation consisted of a letter written to a banker in Oklahoma (which was excluded from the evidence and does not appear in the transcript), the personal recommendation of a Texas banker and a financial statement made by Eaves. This financial statement sets forth assets of various indicated kinds aggregating more than $115,000. One item of this statement is as follows:

"Three thousand and ten acres of land located in Carter county, Oklahoma, worth twenty dollars an acre, $60,200."

As a matter of fact, with these 1,450 acres (included in these two deeds) excluded, Eaves, at that time, would have had owner-ship of much less than 3,010 acres, with a mortgage upon 370 acres additional which he had conveyed a short time previously. With the land covered by the two deeds, he would have had at that time considerably more than 3,010 acres. Either way there was a discrepancy in the statement made by Eaves and it is evident that his estimate of the land owned in Carter county was a mistake, not intended to create a false impression. The probable explanation of this acreage in the statement is as follows: As nothing had ever been paid upon the 370 acres of land Eaves had sold and upon which he held a mortgage, he testifies that he had regarded it as really his land. He also owned 365 acres of land in Texas. If these two acreages be added to the 2,280 acres of land in Oklahoma which he owned, it will make 3,015 acres, which is within 5 acres of the amount set forth in his statement to the bank. But, however innocently this misstatement may have been made, it was made and it was not true. However, it is shown that the bank made no further investigation of Eaves' standing or of this land. Therefore, whatever rights it might have against Eaves because of this false statement, it could not have been deceived by the fact that these deeds were not recorded or otherwise made known to it. Hence, it would seem to follow that the bank has no ground of complaint based upon a false appearance of ownership created by withholding the deeds, because it did not know of such false appearance.

Again, the evidence seems clear that at the time the notes represented by the judgments here sought to be enforced were made, there was no intention or purpose by any of the parties to these deeds to withhold them from record. The positive and undisputed testimony of the parties to the deeds and of the notary and abstractor is as follows: That at the time the deeds were made, Mrs. Eaves and her daughter wanted the notary to have them recorded. Having in his own mind that it might affect the business standing of Mr. Eaves, but not communicating that fact clearly to either of the women, he suggested that they be not recorded at once. To this they acquiesced. A few months later, however, and before any of these notes were executed by Eaves, the mother and daughter went to the notary, insisted that he record the deeds and gave him the necessary recording fees. He told them the deeds would be recorded at once. He put the fee into his pocket and apparently forgot the transaction entirely. It was not until almost two

years later that some question arose about the recording of the deeds and it was ascertained that it had never been done. The notary swears positively that he intended to record the deeds and thought they had been recorded and the grantees are positive that they thought the recording had occurred as they had directed. From this evidence it sufficiently appears that the holding from the record at the time these notes were made was not only accidental and unintentional but was directly opposed to the intention and desires of the grantees who had the direction of the matter. We think, therefore, that this contention as to failure to record is not sustained.

[3] The next contention of appellants is that the deeds were fraudulent because executed with a view to the fact that J. J. Eaves might or would become indebted. We think it unnecessary to pass upon the existence or limits of the general rule of law thus involved. In our judgment, the facts shown here would not justify the application of such a rule. There is no dispute in the evidence that one of the moving purposes, if not the governing motive, back of the wife's desire to have a division of the property was that she feared the husband might be unsuccessful in his Rio Grande venture and lose or imperil their land. However, that would be an entirely legitimate reason for the action taken. At that time no liability had been incurred by the husband, he had no question of the advisability of making that investment nor of its success and none of them had any thought of defrauding anyone.

What has been said above disposes of two other contentions presented by appellants to the effect that the trial court erred in holding that the Citizens' Trust Company must not have relied upon this particular land rather than upon the general ownership of such land and that the deeds being fraudulent as to one would be fraudulent as to all.

We think the decree should be and it is affirmed.